We'll next hear United States v. Butler. Good morning, Counsel. Good morning, Your Honor. Would you like to reserve some time for rebuttal? Yes, I would. I would like to reserve 5 minutes of the 15 minutes allotted time, please. Great. All right. You may proceed. Thank you. My name is Guillermo El Bosch. I represent the appellant, Mr. Franklin Butler. Mr. Butler is requesting that the motion to suppress, which was denied by the district court below, should in fact have been granted, that the conviction and sentence, which basically stemmed from the failure to suppress the evidence and statements made, that those should be vacated. Now, to begin, let's talk about the motion to suppress. The government, in its response in this court, first raised the issue of standing of my client to receive the benefits of the Fourth Amendment. It is the first time that they did that. We had a full briefing in the court below regarding the motion to suppress. We had oral argument besides an evidentiary hearing. And in all those areas, the government below failed to raise the issue of standing. Of course, the cases of Stieglald v. United States and United States v. Santana, both state very clearly that the government loses its right to raise factual issues of this sort, the issue of standing, when it has made contrary assertions in the courts below or when it has failed to raise such questions in a timely fashion during the litigation. You think that applies to standing? Standing is almost jurisdictional, right? Well, but it can be waived. And the United States Supreme Court has stated that an objection to standing can be waived by failure to raise it in the court below, which the government has done in this case. However, let me state that the government also made, to a certain extent, contrary assertions. And you can find the record in two areas. First, when it brought in the post-arrest statements of the co-defendant, Bill Murray. And Bill Murray states that when he arrived at Apartment 304 on November 18, 2001, Mr. Butler was already there. Furthermore, the government also stated that Mr. Butler, when he testified at the trial, not at the suppression hearing, testimonial hearing, Mr. Butler claimed, excuse me, Mr. Keith said that Mr. Butler was already at Apartment 304. So the inference is raised that Mr. Butler was at the very least an invited guest of Mr. Murray, or he had some kind of arrangement to stay at that apartment. And it's true, the record is unclear about that. But it's very clear that Mr. Butler was at Apartment 304. Now, again, under Minnesota v. Olson, and also in the Third Circuit's own case, United States v. Williams, 1979 case, it is very clear that an invited guest in somebody's home can also receive the benefits of the Fourth Amendment and thus have standing to raise a motion to suppress. Well, frankly, the problem in this case with the standing argument is, I mean, you sort of pointed it out, is that because it wasn't raised in the district court, we don't have any findings on it. So we don't know exactly what happened or what the circumstance is. In other words, if the government raised it at the trial court, maybe you would have taken the time to establish that, well, right, he was an invited guest or something like that. Or anyway, we'd have a clear record and perhaps maybe a finding on it. Your Honor, what I'm trying to say is I think it was assumed by the government and by us that he was an invited guest. In other words, that he had standing. The whole issue was not brought to anybody's attention until after the appeal, the main brief was filed in this case. And I do believe, even though the district court below did not make a specific finding of fact, and you are correct about that, sir, that it was because it was assumed that he was, you know, properly at that apartment through the invitation of Mr. Mertz. So if we get to the merits, then what? Well, when we get to the merits. When we get to the merits, I mean the merits of the search. That's correct, sir. What we're talking about there, of course, what we're coming down here is the question of the police have a warrantless entry. We know that. The question is on what basis can they justify that? And the only basis that they've raised, of course, is exigent circumstances. Now, Mr. No, no, no, no. They also raised the fact that, you know, a crime was committed right there on the scene. In other words, he said, right? They say it's an assault on the police officer by pointing the gun at him. But that doesn't occur until the door is open and until they have made, in a sense, the intrusion through the threshold of the apartment. Wait a minute now. You're saying it's an intrusion to knock on the door? In this case, it is. And let me give you an example, Your Honor, if I may. Look at the United States versus Coles case, which this court decided a year ago. All right. If, instead, when the police do the knock and talk technique, which is exactly the same technique they're doing at Coles that they're doing here in Allentown. All right. The police knock on the door of apartment 304. And instead of somebody opening the door and supposedly having a gun in their hand. And, of course, as the court, the panel knows, we're questioning whether that really occurred or not. However, instead of somebody opening the door with a gun in their hand, we hear running around noises or rushing noises or perhaps flushing of the toilet, which is what happened in Coles. I'm sorry. And the court in Coles says it's that reaction which was provoked by the police action. Well, now, Coles in this case are two different things, wouldn't you say? In Coles, they bang on the door and say this is the police that demanded entry. In this case, the guy knocks on the door and says it's Chris. Isn't there a distinction there? No, Your Honor. And I will say that because they're both. They didn't demand entry and they didn't announce themselves as police. There were subterfuges in both cases. In the Coles case, they said room service. Well. And then they said maintenance man. I mean, they could have said land shark. Right. You know, and that's basically the pretext. But they didn't. Now, in Coles. But the entry occurred in Coles only after they announced themselves as police and demanded entry, right? That is correct. Okay. And that is true in that case. But the point is that when the police arrayed themselves in the hallway of the Allentown apartment building in a combat fashion, and they absolutely did that, they weren't going there to merely ask questions. They weren't going there. But that itself is not a Fourth Amendment intrusion. I mean, you arrayed people along the hall outside the door. No, you're right, sir. But you are still looking at the reasonableness of the investigatory technique and whether it is a pretext or not. Did the police have probable cause to enter Butler's apartment? I think they probably did have probable cause, and their proper technique would have been, since they had the apartment secured, since the people and the occupants of the apartment were not aware of the surveillance, the proper thing would have been to get a warrant. At page 17 of your brief, I believe you suggest that they did not have probable cause. Would you take a look at that, please? And you think we don't read the briefs. No, no, no, no, no, no, no. Is that the main brief, Your Honor? I assume you're talking about this. Your Honor, I believe Don's suggesting that. Well, right at the bottom of page 16, it says, the police officer did not have the requisite probable cause. Right. Right at the bottom of page 16. Right? Yes, sir. I think this little discrepancy gets to the heart of my question in this case, which is, it's not entirely clear to me that they had probable cause, because their encounter with the neighbor, which was, from the neighbor's perspective, involuntary, query what quantum of reliability the information conveyed by the neighbor gave to the police. I don't know whether they had probable cause or not. And doesn't that make this case quite different from Coles? Wasn't this court troubled in Coles by the fact that you had a hotel manager in the room, seeing the contraband, calling the FBI, inviting the FBI, the FBI making an admittedly illegal search and entry into the room, then the FBI staking out the room, then lying about being room service, being the maintenance man, and then, when they knocked on the door, supposedly, according to the government, to knock and talk, and they hear the flush of the drugs down the toilet, then they start, they use a key, and start entering the room, and but for the deadbolt, they would have barged into that room. Isn't that qualitatively quite different? And the facts matter, don't they? Aren't the facts critical regarding the reasonableness of these searches? Absolutely, Your Honor. Now, where I differ, if I might, is that I cannot judge, and I believe that they may not have had probable cause, but they might. I mean, if you look at Coles, and Coles was decided after I filed the brief. Let me just interrupt for one minute there. If you concede that we're not sure whether they had probable cause or not, what is an officer to do? Turn around and go home? He has to knock and talk. He doesn't have any alternative because he's not sure that he can get a warrant. Why should he swear a warrant if he's not convinced that he has probable cause? But, Your Honor, here you have to look at the police action, and the police do two things which I think show us the state of mind. A, they call for backup after they talk to the neighbor. They don't call. At least in Coles, they attempted to get a search warrant. Does that have anything to do with your client's First and Fourth Amendment rights? I mean, that may just be prudent policing. But I do believe that it shows that the police had an intention of going into that apartment without a warrant whether or not they have probable cause or not. They were going to create the exigent circumstances. The fact is, if what you say is true, then the knock and talk is doomed because the guy knocks and says his name. If that creates the exigent circumstances, how can they ever employ knock and talk technique? Your Honor, if I were a detective and I had a partner, okay, and if we go to the door and we knock on the door to try to investigate, that's knock and talk. However, when you call for backup and they array themselves in a combat formation in the hallway, that leads you to believe that they're expecting more than just to get information. They're expecting to go into the building. And I think that's what Coles is talking about. He's saying you have to look at what the police did, not necessarily what they're saying. But we all know they have no right to go into Mr. Butler's apartment until he brandishes a gun. Well, of course. If he opens the door and says, Chris, I don't know you, please leave, or slams the door in his face, we all know they can't go in. Well, of course, my argument is how do we know that didn't happen? Because then I go to a question of what did this one policeman, Christopher Cruz, said? Is that believable or not? Because the two other policemen who were with him do not see a gun. Didn't the chief judge make a finding on that, though? Yes, he did. Well, I'm saying that was clearly erroneous that he did that. I mean, that was, you know, just from you reading what the, and you have the testimony of what the other policemen say. I'm not making that up. It's there. Oh, no, but that's just not, you know, that's just the not uncommon scenario where you have varying testimony, and that's the reason you have a judge make the finding because it's up to him to determine, you know, which is more believable. Right? That's what happens. There's nothing unusual about that. And so that's what happened. So aren't we bound by that finding? Not if you think that it was specifically. It's supported by evidence, isn't it? Although you think it's not the more persuasive evidence, it's still supported. I think that you have enough on the record that you can say this was physically impossible for him to see that. This other man had a better view, and the judge made the wrong choice. He did say he saw it, right? He did say he saw it. No, no, no. Resnick, who is the officer with a better view, says he does not see a gun. Cruz, who is the team leader, says he saw it. He said he saw it. I mean, Cruz. Yes, that's correct. He did do that. All right, counsel, we'll hear you on the rebuttal. Thank you. Thank you, sir. Good morning, Your Honors. My name is Jose Artegui, and I represent the United States government this morning in this case. I'd first like to start off with the issue of standing. It is true that the government did not litigate this below. The government first raised it on this particular appeal. Your Honor, the defendant in this case, Franklin Bullitt, does not have standing, given what we know from the record. What about the waiver argument? I mean, you didn't bring it up until now, admittedly. That's correct, Your Honor. Despite the fact, Your Honor, that we're raising it for the first time in the court of appeals, this court nevertheless may affirm that on appeal, even though it was not raised below or relied on by the parties. And that is Third Circuit precedent, United States v. Perez, which clearly says that very thing. You can affirm on any proper reason, even though it may not have been relied on below by the parties. Well, the question is the propriety, though. It seems to me what happened in this case is that you had two co-defendants. It was clear that one of the co-defendants had standing, and the question of Mr. Butler's standing fell through the cracks. That's true. Isn't it imperative that if the government wants to fight standing, that it ought to make a record in the trial court and say, well, we agree. I've forgotten the co-defendant's name. Bill Murray. Murray. Okay, forget that name. But isn't it fair that the government could say, well, we know Murray has standing. He's on the lease. It's his apartment. But this other fellow, Butler, we want to challenge him on multiple fronts. And the first is to say that he's not an invited guest. He's there only temporarily for the illicit purpose of engaging in criminal activity. It would seem to me incumbent upon the government to press that argument in the first instance with the trial court and make a record so, as Judge Tachiba suggested, the district judge could make findings that would be subject to our review. Well, that's correct, Your Honor. We should have litigated this below. We didn't. It was an oversight on our part. Nevertheless, the state of the record as it exists would support the ruling by this court that Franklin Butler does not have standing. But even if we get beyond the issue of standing, there's no question in this particular case that the conduct of the police officers on that very day was entirely appropriate. Well, Mr. Barr says that, in fact, you created the exigent circumstances. In that, he is incorrect. And I know that he is relying on U.S. v. Coles, which is a situation where the police just flat-out created the exigent circumstances in that particular case, even though the police officers in that case did have probable cause. Whereas, in this particular case, Your Honor, the police officers didn't have anywhere near probable cause. It's not clear at all, as Judge Hardiman mentioned earlier, that there was probable cause in this case. As a matter of fact, counsel conceded in his brief that there was no probable cause. And it's important to note that in this particular instance, the police officers were first told of drug activity, and that's what brought them to the apartment building. When they got to the apartment building, they first learned, for the very first time, now that they're hearing information about a gun. That was never reported before. Then that neighbor said, oh, yes, there's drug dealing going on by that apartment. Well, the officers quite prudently went to that apartment and conducted a surveillance for at least 15 minutes, which is in the record. They didn't observe any of that. Not only did they not observe any drug dealing, they didn't observe any illegal activity of any kind, so that the information from the neighbor is dubious. This is a woman who they did not know. They have never dealt with before. They had no way of knowing whether she had ulterior motives by making accusations against someone in that apartment building. And if that information would have been presented to a magistrate or a local judge, it's unlikely that a search warrant would have been issued because these very questions could not have been answered to the judge appropriately. Well, do you know or have you dealt with this person? No, Your Honor, we have not. Well, she said she was in there. That's true. But the information that the police officers then attempted to corroborate seemed to undercut that very information she was providing. And I point specifically to the situation when the police officers went upstairs to confirm whether or not there was some drug dealing where you would expect some heavy traffic or at least some traffic and some hand-to-hand exchanges. None of that was observed. So the police officers quite properly had some pause as to whether or not the credibility of this stranger was sufficient to go immediately to seek a search warrant. In this particular case, the officers could not have done anything other than what they did. If this is not a straightforward knock-and-talk scenario, there is no such thing as knock-and-talk in the Third Circuit. Now, your adversary brought up the fact that the police had fanned out and had backup and all. Does that have relevance to our issue here? It does not have relevance, and the reason being is when the police officers went to the apartment building, they learned for the very first time that someone may have a weapon, a firearm. So the police officers, hearing that information, quite properly arrayed themselves in the event that they, in fact, were going to encounter a firearm. The lead, and this is where counsel is mistaken if you review the record thoroughly, the lead officer in this case was Officer Chris Cruz, and that's crucial because he was right in front of the door. He was in plain clothes, and he had a clear, unobstructed view of that firearm. Defense counsel points to Officer Reinick, who was in uniform, behind Officer Cruz, saying Officer Reinick saw the defendant and didn't see him with a firearm. If you look at the record closely, there was a question and answer pertaining to this very issue, and the question that was answered by Officer Reinick, and I believe it was on cross-examination, Officer Reinick actually says, I did not see his hands. What Officer Reinick saw was his face and his left shoulder. That's all he had an opportunity to see. Had Officer Reinick had an opportunity to see his hands, he would have also seen the firearm that Franklin Butler was holding. You say that's part of his cross-examination? I believe it's part of the cross-examination, and I can actually get the page citation if the court wishes I have it tabbed. If you have it handy, I'd like to have it. Sure. Probably page 138 around there somewhere, huh? Okay, it's on page 592 of Volume 4 of the appendix. I'm sorry, it was on direct, and the question is, okay, were you able to see whether or not he had anything in his hands? This is Officer Reinick. Answer, no, I didn't see anything. I didn't see his hands at all. So, Your Honor, that suggests to me that Officer Reinick didn't have an opportunity in the first instance to see whether or not Franklin Butler was armed. But there is corroboration in the record for Officer Cruz's testimony. If you read the testimony of Officer Huff and Officer Mancini, each of them testified that they actually heard Officer Cruz yell, gun, there's a gun, words to that effect. And then seconds later, a firearm was recovered precisely from the location where Officer Cruz saw Franklin Butler place his hand under a blanket that was on the floor where Franklin Butler basically dove into this makeshift bed that was on the floor. So the facts in this particular case, along with the testimony of the other officers, clearly corroborate what Officer Cruz was saying, that he actually saw a gun and he remembered it quite vividly during his direct examination. As a matter of fact, if you read the transcript, Officer Cruz not only describes which hand the gun was in, but he actually describes how the gun was leveled. And in the transcript, you will see a reference that Franklin Butler had a weapon at hip level. So he actually remembers that. So it's not just that Officer Cruz is saying, oh, yes, I saw a gun. He actually describes which hand and exactly where the weapon was leveled at. Counsel, let me ask you sort of a general question. We're talking about coals and the police creating exigent circumstances. How would you respond to the notion that in the realities of today's drug trade, anytime the police do a knock and talk at a suspected drug house or drug apartment, there are likely to be exigent circumstances. The appellate decisions are replete with the notion that drugs and guns go hand in hand. How would you respond to that? Your Honor, in response to your question, it's not so much that there's exigent circumstances waiting to be triggered, so much as who's the one triggering it. And in this particular case, it was not the police officers who triggered the exigent circumstances. It was Franklin Butler's reaction to seeing the police when he opened the gun and pointed a weapon at Officer Cruz that created the exigent circumstances. Because the alternative in this case would have been to let him shut the door, possibly escape and destroy the gun and destroy the drugs, and then post guards by the door and perhaps outside the building waiting for a magistrate judge to authorize a search warrant. But then what would happen is, from a practical point of view, is you would endanger the lives of the residents of that apartment building. And also you would essentially endanger the lives of the police officers that would have to stay behind and guard this apartment building, not knowing whether Franklin Butler would try to escape, perhaps find them. So does that mean that we need to make a rule of law that when the police do a knock and talk, they have to say something like, it's Chris, it's Bob, and if they say, it's the police, that's no good because when they say, it's the police, a lot's going to happen behind the door. Correct, and also what would happen in that situation is then we would be up here defending arguments made by defense counsel that, well, your honor, they said this is the police. They obviously submitted to this color of authority. They felt they had no choice to open the door. So what the police officer actually did in this particular case was quite reasonable by just saying, this is Chris. But if that's our rule of law, should we be suggesting that the police act by subterfuge and not disclose their true identity? Is that where we are in this area? I don't think it makes a difference whether the police say, this is officer so-and-so. I'd like to talk to you if I may, or this is Chris. I don't think we need to make that distinction. I think what we need to concentrate on is the actions of the police prior to the entry in the apartment and what precipitated after that. And in this particular case, the officers were clearly using approved techniques of knock and talk to find out whether or not this information is indeed accurate before they make any rash judgments. And then we also have to examine the actions of the defendant in this case, which is very different than what happened in Coles. And what happened in the Johnson case, which is cited by Coles as a Supreme Court case in 1947, where the police did similar things. They basically demanded entry into the apartment. That never happened in this case. The police officers didn't even have an opportunity to engage Franklin Butler in a conversation about consent to search because they never got to that point. Franklin Butler opened the door with a loaded firearm pointed directly at Officer Cruz, and that's what precipitated the action here. It seems that probable cause works into the picture as well. In this case, in our case, your case, I think everybody concedes, or at least the brief of Appellant conceded, that the officers did not have probable cause. Suppose they did have probable cause. Suppose they had probable cause for various things, and they knocked on the door and it was Chris. Would that be objectionable then? Would that have created ancient circumstances? There may be circumstances where that may be inappropriate, but if you read the Coles opinion, it does not foreclose the right of the police officer, even if they have probable cause. Coles does not say that once a police officer has probable cause, you are forever barred from knocking on the door and asking for consent. Coles doesn't say that. No Third Circuit case that I'm aware of says that. Even though the police officer, let's assume in this case they had probable cause before they even knocked on the door, the police officer can still go to that door, knock on the door, and ask the resident for permission to have a conversation. May I speak with you about something that I just heard from one of your neighbors? And this is what I heard. And then the resident of that apartment has the opportunity to then say, thank you very much. I don't want to speak to you. If you have a warrant, you're more than welcome to search my apartment. So even though there may be probable cause, and let's just assume, as I said, for the sake of argument that there was, that doesn't end the opportunity of the police officer to continue their investigation as to whether or not there was illegal activity. And I see my life as less. Thank you, counsel. Judge Parderman, I believe you're the one who asked what the alternative would have been. The alternative would have been to get a warrant. That's the whole point of this. When you're talking in your brief, they didn't have probable cause. How do they get a warrant without probable cause? Well, I believe that they did not have probable cause, but I was not the police at that moment. The point is that they believed that they had enough information to get backup. So they believed that they had information about that apartment, A, that there were drugs, and B, that there was a gun in there. And they did have a witness. Now, when they had reasonable suspicion to believe there was a gun in the apartment based upon what the neighbor had told them, isn't it simply a matter of police prudence and safety that they get backup once they have reasonable suspicion that there's a firearm in the apartment? And that's fine. And they keep the apartment under surveillance. Remember, it's not a vehicle. It's not going anywhere. They can secure that apartment, continue surveillance like they've done in many other cases to see if there is criminal activity. And at that point, they can go for a warrant. Now, if the occupants of the apartment come out and become aware of the surveillance, then at that moment the conditions do change and there are exigent circumstances. But at this point, that hadn't happened. What happened in this situation is the police, I don't know why, they grew tired. They grew impatient. I don't know. They decided to push the issue by using a technique, the knock and talk technique, which is used when you really are looking for information. In this case, they had information about what was inside. But not enough information now. Isn't that the point? Well, I certainly, in this brief, said I didn't think they had probable cause. But, again, I'm not the police. Maybe they should have waited to get more information through the other techniques. But it's clear that once they knock on that apartment, they're going to get a reaction. But isn't Terry instructive counsel? When an officer has reasonable articulable suspicion that a crime is being committed on a public street, Terry kicks in. But when someone's in their home, we don't want people's castles to be subject to the same level of intrusion as we allow on a public street. That's correct, sir. Well, if the police have reasonable articulable suspicion that a crime is being committed in a home or in an apartment, the way I phrase the hypothetical, they can't get a warrant because they don't have probable cause. Are you suggesting that they're powerless to do anything about it and they just have to ignore it? But it depends what crime we're talking about, Judge Hartman. Well, let's say drug dealing. Aren't they left with no alternative? If neighbors are complaining about drug dealing, whether it's a residential neighborhood in a suburban area or whether it's an apartment building such as this, if neighbors are complaining about drug dealing, isn't it sensible that the police ought to investigate? And if they do some investigation as occurred here and they have reasonable suspicion but not probable cause, isn't the only legitimate alternative to knock and talk, to investigate further without tramping on somebody's constitutional rights and then see what happens when you knock and talk? If you're asking me about what investigative alternative there was, there was one. They could stay there in surveillance. The prosecutor says they were there 15 minutes. Maybe they should have stayed there half an hour, an hour. I don't know precisely what their manuals say about investigative techniques, but it seems to me that they could have waited to see if people do go in and out of that apartment, if there is a drug sale in that hallway. They certainly could have, but did they have to? Yes, I think so. Before they make an intrusion across that threshold. Now, it's different. They didn't cross the threshold until the gun was brandished. Because they weren't expecting that to happen. In other words, they created that. The same thing as in Coles. They created the flushing, the removal, the destruction of the evidence by their attempts to enter the apartment. How is that different by the attempts to enter the apartment, but in this case they claim that a person came to the door with a weapon? It sounds like you're keying into the question I asked your adversary. The nature of drugs and guns is such that knock and talk will always create exigent circumstances. The police will always be upping the ante and creating exigent circumstances when they knock and talk. If they have prior information, as they did here, and as they did in Coles, that they expect that there are guns and drugs in an apartment, knock and talk is not a valid investigative technique because they really do have information. They're not trying to seek more information. They're trying to provoke a reaction. Now, in other circumstances, for example, there's a case, U.S. v. Jones, from the Fifth Circuit, where they were going to do knock and talk, and there happened to be the front door of the apartment open, and there they saw a gun. Okay? Not having anything that the police did. That's a plain view. That's a plain view thing. Right. And so that's where that went. Okay. Thank you, counsel. Thank you. I'd like to thank the panel. Thank you. Thank you, counsel, for your helpful briefs on an argument. Thanks.